Good morning, your honors. May it please the court. Aaron Avila on behalf of the United States. I'd like to discuss four independent reasons why the district court's award of more than a quarter of a million dollars in attorney's fees to plaintiffs in this case should be reversed. First, the ESA's fee shifting provision was not available to plaintiffs because they bring an Administrative Procedure Act claim, not an ESA citizen suit. Second, even if plaintiffs bring an ESA citizen suit, plaintiffs are not entitled to recover fees because they are not a prevailing party in this lawsuit. And the district court based its award solely on the catalyst theory, which the Supreme Court has rejected. Third, even if the catalyst theory still is a viable theory, plaintiffs were not the catalyst here. And fourth and finally, the amount of fees awarded by the district court is an unreasonable and excessive amount, given that a number of plaintiffs' claims were dismissed on the pleadings. And even under the district court's theory, plaintiffs' lawsuit was a catalyst only when the result in this case conjoined with the results in other cases. With respect to the first basis for reversal, as relevant here, an ESA citizen suit is appropriate where a party challenges the secretary's failure to perform a nondiscretionary act or duty. Can I ask a procedural question first? I've not looked at the record to see what the briefs were filed in the district court, but I have read the district court order. It does not mention this argument. It simply proceeds on the assumption that these are attorneys fees sought under the Endangered Species Act. Did you raise this argument in the district court? It was a result of our partial dismissal motion in the district court. You say you did raise it? We did raise it. Okay. We did. Okay. And the second question I have is, you cite no authority for this proposition. Is there any? For what? For when you have an ESA case in this posture, that this is truly an APA case, and therefore the ESA attorney's fees provision does not apply. Well, I think the ESA fee provision only applies to a claim brought as an ESA citizen suit. And in order to bring an ESA citizen suit, you have to allege a failure of the secretary to perform a nondiscretionary act. Now, I understand the argument, but I'm asking you something else. Do you have any authority when you have a case in the posture this case is in that says this is not an ESA case for purposes of attorney's fees? I saw none in your briefs, which is why I asked the question. Well, I think it has to be an ESA citizen suit. No. Do you have any case law? Well, that's what I mean when I say authority. Well, the statute says that in entering final court. The answer is I think the answer is no. I don't have any case law authority for that. Okay. Okay. Okay. I got it. Okay. Okay. So in this case, plaintiffs are not challenging the secretary's failure to perform a nondiscretionary duty. They're questioning how the secretary performed that nondiscretionary duty. But it's a duty prescribed under the ESA, correct? That is to say he's supposed to make this evaluation. The basis for the you've got to do this comes from the ESA. He's then arguing that you didn't do the economic analysis properly, but the duty to do the economic analysis comes from the ESA, correct? As part of the critical habitat designation, the secretary is supposed to look at economic impact. So that's alleged in the complaint as a foundation for the cause of action. Well, they allege that we didn't do a meaningful analysis. They disagreed with the substance of that analysis. Right. And that is a question of how the secretary performed the duty. And that is not brought as an ESA citizen suit. That is an APA claim. That's your contention. I got it. Okay. Plaintiffs rely on Bennett v. Speer, and that addresses a very different question than what plaintiffs cite it for. In that case, the Supreme Court recognized that a claim that the secretary completely omitted required procedures was judicially cognizable as an ESA citizen suit. The court found that the language of the ESA, as we were just talking about, provides that a critical habitat designation be based on the best scientific data available and consideration of economic impact, and that imposed a mandatory procedure. While a claim the secretary failed to follow a required procedure in the decision-making process can be brought as an ESA citizen suit, the question about how the secretary did that analysis is subject for, as Bennett recognized, abusive discretion, and that is an APA claim. With respect to the prevailing party, unless there's any other questions on our argument on that, I'll turn to the prevailing party requirement, that even if fees were available under the ESA in this case, plaintiffs are entitled to them because they were not a prevailing party. Plaintiffs in this case obtained no court-ordered relief that created a material alteration in the party's legal relationship. Now, is the statutory fee entitlement under the ESA prevailing party, or is there some other language? It's a whatever appropriate statute. Prevailing party is not in the statute. Correct. And this Court, this Court in Marbled, Murlatt, recognized that the Supreme Court in the Ruckelshaus case read a prevailing party requirement into the ESA. And in Ruckelshaus, the Supreme Court addressed the meaning of the whenever appropriate language. And in that case, the Court applying the American rule and the rules for construction of the waivers of sovereign immunity concluded that Congress uses the whenever appropriate language to expand the class of parties eligible for fee awards. From prevailing parties to parties, partially, to partially prevailing parties, excuse me, parties achieving some success on the merits. Thus, under Ruckelshaus, it's appropriate to award fees under the ESA only when a party is a prevailing one. And that, this Court, as I mentioned in the Marbled, Murlatt decision, recognized that Ruckelshaus, citing Ruckelshaus, that the United States Supreme Court had read a prevailing party requirement into the ESA. Now, was Marbled, Murlatt decided before the Supreme Court's decision in Buchanan? It was decided before the Buchanan decision. So they didn't have, they weren't trying to figure out what prevailing party meant as they were using that language as against the Buchanan case. Not as against the Buchanan case, but they were deciding which, whether the Hudson Valley case, Supreme Court case, applied in Marbled, Murlatt. And that turned on the difference. They said that the difference between the statute that was issued, at issue there, and the statute, the ESA statute, the only difference that the Court in Marbled, Murlatt noticed was a difference in the language. One said prevailing party. The ESA did not. And the Court said that that, this Court said that that didn't matter because the Supreme Court had read a prevailing party requirement. That was a long answer, too. It was before Buchanan. So the question that now is in front of us seems a little difficult, seems a little different because of that intervening case that raised the stakes enormously in terms of what prevailing party means. Well, but the underlying issue, what Ruffles House says, does not change. And this Court said that Ruffles House read a prevailing party requirement. So in Buchanan, the Supreme Court then clarified what it takes to be a prevailing party. And the Court rejected the catalyst theory and held that in order to prevail, a party has to create a material alteration of the legal relationship of the parties, such as obtain an enforceable judgment on the merits or a consent decree. Plaintiffs failed to do so here. So they are not, it is not appropriate under Ruffles House, Marbled, Murlatt, and Buchanan to award fees under the ESA in this case. If there's no questions on that, I'll move on to the third point. I don't know whether to look over here. You can look at Judge Hugg as much as you want. Even if the plaintiffs can't. We will not be insulted. We always look at Judge Hugg. Even if the plaintiffs can recover under the catalyst theory, the District Court erred when it found the plaintiffs established the necessary causal relationship between the litigation brought and the practical outcome sought. A plaintiff must show that the lawsuit was at least a material factor or played a catalytic role in the ultimate outcome. At a minimum, the lawsuit must have been a catalyst that prompted the opposing party to take action. In this case, first of all, the claims were resolved in a completely separate consent decree, in a completely different litigation in the D.C. District Court. In the interim, so first of all, it's the NAHB consent decree that vacates and remands the critical habitat designations that are at issue in this case. And that would occur regardless of plaintiff's case. Secondly, the District Court itself acknowledged that it was only this lawsuit when it combined with all of these other things going on, such as the Tenth Circuit's decision in the New Mexico Cattle Growers case, that then the District Court concluded led to the NAHB consent decree. That can't be what a prevailing party, what a material factor or catalytic role, if there's three other factors that are at work. That can't support a waiver of sovereign immunity to require the United States to pay fees under the catalyst theory. It just doesn't, the District Court's own opinion doesn't bear out that it was this lawsuit that prompted the ultimate outcome that plaintiffs saw. Which suit was brought first? Was the D.C. Circuit case or this case? This case was brought about three months before the D.C. case, because before this case was filed, before the D.C. case was filed, we had moved for partial dismissal in this case, substantially reducing the number of critical habitat designations that were at issue in this case, or in our view, at issue. And then 13 months later, the District Court agreed with us in large part. So it went, the complaint in this case was filed, we moved for partial dismissal, and I think about a month after that, the NAHB case was filed. Well, I was just observing some of the procedural matters that were going on in this case. It was held up quite a while, which in a sense, you sort of feel that could there have been a race between the two cases with one being entitled to an attorney's season and the other one not? It seems like they were both doing the same thing. With all due respect, we filed a motion for partial dismissal within two months of the complaint in this case. That was on the Heard in December of 2000. The District Court did not rule on that motion for partial dismissal until January 31, 2002. So much of the delay was in August of 2001, we moved for a stay of the summary judgment briefing in light of the fact that the scope of the litigation had not been set yet because of this motion for partial dismissal that was pending, which in the end completely eliminated Plaintiff's NEPA claim and eliminated their challenge as to 13 of the 19 critical habitat designations that they challenged. So there was a delay in this case, but it was, I mean, it made sense to wait until the scope of the litigation was decided. And that didn't happen until January 31st of 2002. I'd also like to address the unreasonableness of the fees here. This is a quarter of a million dollars for a case that went moot because of another case. At the outset, the District Court erred by not deducting at least $30,000 as a portion for counsel's work on the summary judgment motion. And that summary judgment motion that was filed early, 10 days early, knowing that NMSE's motion for partial dismissal was still pending, NMSE's motion to stay summary judgment briefing until the court ruled on NMSE's partial dismissal motion was still pending, and NMSE was going to move for a voluntary remand the next day. It just, it was unreasonable to go forward with the fees given that situation, to go forward with the summary judgment briefing given that situation. And this is only the, where only the $30,000 only corresponds to the August 20th, 2001, to when the summary judgment brief was filed. So it's not all the summary judgment briefing. I'd also note that the Supreme Court has said the most critical factor in determining the reasonableness of a fee award is the degree of success obtained by a party. The District Court's decision is inconsistent with that principle in a number of respects. First, the District Court itself concluded, as I mentioned earlier, that plaintiff's lawsuit was a catalyst only when it conjoined with the results in other lawsuits, and the District Court should have taken that into account and reduced the fee award. Second, plaintiffs started out challenging critical habitat designations for 19 ESUs, and their claim was ultimately dismissed as to all but six of them. And finally, even under the District Court's theory, the District Court seemed to conclude that plaintiff's lawsuit was the catalyst to the consent decree that mooted out this case. But the practical effect of the District Court's order is that two sets of plaintiffs have now recovered fees from the United States for a single consent decree where one party didn't participate in those settlement negotiations and had no role in that case. We respectfully request that the District Court's order be reversed, and I'd like to reserve the balance for rebuttal. Thank you very much. Thank you very much. Good morning, Your Honors. Greg Wilkinson for the Appellees. I'd like to begin by responding further to the question that Judge Fletcher, you asked initially about the procedural matter. In your fall stack of materials, you should have the excerpts of record that were filed by the United States. And if you look at page 142 of the excerpts of record, what you will see is the consent decree that was filed by the United States and the plaintiffs in the Washington, D.C. case. That's the NAHAB case, the parallel case. And in that consent decree at page 142, the following statement appears. I'll read it. The National Marine Fisheries Service, NIMS, agrees that plaintiffs are entitled to an award of reasonable attorney's fees and costs incurred for pursuit of claims related to the designation of critical habitat as set forth at 50 CFR section 226.212, subject to a showing that such fees and costs are reasonable and appropriate. That's the language of the ESA citizen suit provision. It is not the language of the APA. The APA argument that you asked about, Judge Fletcher, was not raised in the court below. Moreover, it was not included in the consent decree that was entered by Judge Kolarkatelli in Washington, D.C. The standard that was used in that case, which challenged the identical critical habitat designation, was the ESA standard of reasonable and appropriate. The standard under the Equal Access to Justice Act contains a prevailing party requirement. It also requires a showing that the position of the United States was not substantially justified. Those were not the standards employed by the government in this consent decree. So what has happened is that there is a post hoc, if you will, argument being made for the first time on appeal that the appropriate statute to bring a fee claim under is the AEJA. Not only was it not raised below, not only was it not employed in the D.C. case, it's just simply wrong. We are not arguing here that they did the economic analysis incorrectly. They didn't do an economic analysis at all. What they did was to cut and paste from other critical habitat designations, and frankly, that's why we brought the pattern and practice claim that we did. In every single critical habitat designation that the National Marine Fisheries Service did, and we identify them all in our motion for summary judgment, they used the identical approach. They never, ever did an economic impact analysis, and there's nothing in the 30,000 pages of the administrative record in this proceeding that indicates any attempt by anyone to do an economic impact analysis. Now, as a result of this case, the government is now doing this kind of document, which is something done by the Fish and Wildlife Service for the Gulf Sturgeon. What's happening is that these economic impact analyses are becoming akin to environmental impact statements. They're lengthy. They're detailed. They're circulated in advance to the public, and the public is allowed to comment on them, and then they are finaled as part of the designation of critical habitat. Nothing like this was being done prior to the implementation or the institution, I should say, of this lawsuit. What you got instead was a single paragraph that was identical to the paragraph that was used in every single critical habitat designation. Now, I think that there are – I'll follow the government's approach. That's the first issue that Mr. Avila addressed. But just to reiterate what I think I heard from you, you're saying that this argument that attorney's fees are not being sought under ESA, but they're rather being sought under APA, you're saying it simply was not raised below. It was not raised below. Well, and the other side has saved some time for rebuttal. They may be able to point me to a position, a page I can look to that would say the contrary. Okay. This is just – I'm trying to warn them, okay, you've got 15 minutes to find it. I understand that. And as I pointed out, not only did they not raise it, but in the parallel case, they used the ESA standard, not the APA standard. Turning to the second issue, again, responding to a question that you asked not in this case, but in one about two cases earlier, is there any other circuit authority on the question of whether the catalyst theory survives the Buckhannon opinion? I think we pointed it out in our briefs. Yes, the 10th, the 11th, and the D.C. circuits, as well as the central and northern districts of California have all rejected the government's argument that the catalyst theory, as applied to the Endangered Species Act, does not survive the Buckhannon opinion. The only case they've been able to come up with is the Marble Miralette case, which, as you recognized, was a case where that was really not an issue. It was mentioned in a footnote, and it did precede the Buckhannon opinion. So this Court has not addressed yet the question of whether or not the catalyst theory survives Buckhannon. The courts that have, in fact, every single court that has considered the question has rejected the government's contention that it does not survive the Buckhannon case. The third issue that the government raised was whether our petition, our complaint, served as a catalyst with respect to the decision by the government to remand and ultimately vacate the critical habitat designated in this case. Judge Coyle found that our case was a catalyst. There's no requirement in the law that it be the catalyst. A catalyst is sufficient. Judge Coyle's determination is a factual determination. The authority in the circuit says that that determination is reviewed on a clearly erroneous basis, and it's our contention that there is a great deal of evidence in the record to suggest that we were a catalyst in this case. Not only was there the timing of the lawsuit, it was, Judge Hugg, the first case that was brought. Yes, Judge Coyle did sit on the government's motion for a period of time, but everything that happened, and we've tried to lay this out in our brief, in terms of the government's first seeking a remand, then subsequently to the filing of our motion for summary judgment, filing subsequently to that, the consent decree, which not only agreed to a remand, but also vacature of the critical habitat designation at issue, all of that happened as a result of the proceedings in this case. What you have is a situation where you had the same attorney at the Justice Department handling both cases. I mean, it's logical that that would occur. And there was a certain, I think, amount of manipulation going on in these cases. And what, although, yes, it was a separate case, the fact is the government attorney tied the two cases together. It was the government's lawyer who used the dependency of the motion for summary judgment in this case to ask Judge Kolar-Catelli to speed up her consideration of the consent decree in the NAHAB case. And in her memorandum order granting the consent decree, she recognizes that and, in fact, says, yes, we've speeded up our consideration of the consent decree because the government asked us to because of the dependency of the case in the Eastern District. You've got the contact by Ann Clee, the advisor to Gail Norton, saying, gee, we're trying to, because of your case, we're trying to convince the Department of Commerce to change their position and really do an economic impact analysis. So there's a great deal of material in the record. I won't go through all of it because of the limitation on time. But in our brief, we've shown, I think, very clearly that the actions that were taken by the government are tied very closely to the activities that occurred in this case. And, frankly, there were a lot of them. That leads me to my final point. There were a lot of things going on in this case. There were lots of motions that had taken place, lots of efforts by the government to delay this case all the way along that we had to respond to. The consequence was that we did spend a great deal of time dealing with the government. They put us through a lot of hoops along the way. Judge Coyle has been around for a long time. He was very closely connected with this case. He examined our petition for fees. He reduced our claim in several circumstances. His opinion, which runs some 30 pages or more, goes through in very careful detail and looks at the rates, looks at the hours, and concludes, after he does reduce some of the fees that we had sought, that the resulting numbers were reasonable. That's really all I have to say. If you have any questions, I'd be happy to try and answer them. I take no questions. Thank you very much for your argument. Thank you very much. And the government has saved some time for rebuttal. With respect to raising the issue below, I would direct the court to page 29, footnote 7 of our brief, where we talk about how the issue of the basis of plaintiff's suit was brought up. Also, in our statement, issues presented, issue 1, I put where we raised this in the district court. Also, the motion was brought pursuant to the ESA. And earlier in the litigation, in connection with the motion for partial dismissal, we had raised the issue of whether this was an ESA citizen suit. Okay. So I should just ‑‑ I'm now on your brief in footnote 7, so I just look at the record, the extra pages cited there. I'll find it there. Okay. Okay. Thank you. And, again, it was because of ‑‑ in the partial dismissal motion, we claimed that this was not an ESA citizen suit. The motion was brought pursuant to the ESA. And in those pages, and I'll go read them myself, of course, but in those pages, do you talk about attorney's fees or do you just say this isn't an ESA? This is not an ESA. It's not an ESA citizen suit. But you're not talking about fees in those pages? Right. Okay. But I think it's, again, I don't want to repeat what I said earlier, but in order to bring a motion, it has to be an ESA citizen suit. I'm sure. We will certainly consult those pages, and we'll probably look around a little more, too. One other thing, of course, the NAHB consent decree was a settlement of these issues. The notion that somehow it starts off with the typical this is not an admission of fact law, and the fact of the matter is it was a settlement of these issues, of a case. And so the notion that we're somehow being inconsistent, I just don't follow the argument given that it was a settlement of the case. Unless the court has any other questions. I think not. Thank both of you for a very useful argument. The case of Association of California Water Agencies v. Evans is now submitted for decision.
judges: Hug, Alarcon, W. Fletcher